```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
STEPHANIE NEWMAN DURST,                CLASS ACTION
on behalf of herself and all            COMPLAINT
others similarly situated;
                                       Docket Number:
            Plaintiffs,                08 Civ 6180 (DC)

       -against-                       Civil Action

CHRYSLER LLC and EAST HILLS            ECF CASE
CHRYSLER-PLYMOUTH, INC.,
                                       Jury Trial
            Defendants.                Demanded
---------------------------------X
```

Plaintiff, by her attorneys **The Durst Law Firm, PC,** alleges the following upon information and belief:

### REPRESENTATIVE PARTY

1. The named plaintiff STEPHANIE NEWMAN DURST is the owner of a 2003 Chrysler Sebring.

2. DaimlerChrysler Corporation was the manufacturer and seller of the 2003 Chrysler Sebring.

3. On or after August 03, 2007, Chrysler LLC assumed the liabilities of DaimlerChrysler Corporation, for claims made concerning defects in the manufacture and sale of the 2003 Chrysler Sebring automobiles.

4. The defendant CHRYSLER LLC is a corporation with its principal place of business in Michigan.

5. The defendant EAST HILLS CHRYSLER-PLYMOUTH, INC. is an authorized Chrysler dealership which sold the named plaintiff a 2003 Sebring convertible as a new vehicle.

6. Said automobile came with an extended warranty plan providing coverage for the period of seven years or 70,000 miles.

7. The plaintiff's vehicle engine failed at approximately 52,000 miles.

8. The plaintiff brought the vehicle to the Chrysler dealership in Newburgh, New York for repair of the engine malfunction, but was informed by that dealership that they were instructed by representatives of DaimlerChrysler Corporation not to honor the warranty by repairing the vehicle.

9. As a result, the plaintiff was required to repair the vehicle at her own expense, paying over $5,000.00 for purchase and installation of a replacement engine.

## CLASS ACTION CERTIFICATION

10. The named plaintiff is representative of the claims of similarly situated owners of vehicles with

2.7 liter engines designed, manufactured and sold by the DiamlerChrysler Corp.

11. 1998, 1999, 2000, 2001, 2002, and 2003 Chrysler Sebring, Chrysler Concorde, Dodge Intrepid, and Dodge Stratus automobiles all have models which utilize the same 2.7 liter engine. All said vehicles will hereinafter be referred to collectively as "Chrysler Sebring", the representative plaintiff's model vehicle.

12. The prerequisites are met for the plaintiff to represent all members of this class of consumer.

13. The class is so numerous that joinder of all members is impracticable.

14. There are common questions of law or fact.

15. The representative parties have claims which are typical of the claims of the class.

16. The representative parties will fairly and adequately protect the interests of the class.

17. There are questions of law or fact common to class members that predominate over any questions affecting only individual members.

18. There are more than 100 members of the proposed class.

19.     There is an aggregate amount in controversy in excess of Five Million ($5,000,000.00) Dollars, exclusive of costs and interest.

20.     There is the requisite minimal diversity of citizenship between one plaintiff and one defendant.

21.     The class definition should include all New York State residents who are owners of 1998, 1999, 2000, 2001, 2002, or 2003 Chrysler Sebring, Chrysler Concorde, Dodge Intrepid, or Dodge Stratus automobiles with a 2.7 liter engine.

22.     A first subsection of this class should be those whose vehicle was covered by express or implied warranties at the time of the failure, and who paid for the repair or replacement of the engine themselves.

23.     A second subsection of this class should be those whose vehicle was not covered by an express or implied warranty at the time of the failure, but who paid for the repair or replacement of the engine themselves.

24.     A third subsection of this class should be those who have not paid for the repair or replacement of their engines, but whose vehicle value and/or resale value has been reduced as a result of the defect.

## A FIRST CAUSE OF ACTION FOR
## NEGLIGENT DESIGN AND MANUFACTURE

25. Plaintiff repeats and reiterates each paragraph of the allegations set forth *supra*, as if fully stated herein.

26. Basic human factors engineering is a part of the standard design and manufacturing of products, and consumers rely upon such proper engineering principles being adhered to in the design and manufacture of expensive, modern automobiles.

27. Basic principles of human factors engineering require that there be a margin of safety built into any recommended service plan, so that human inadvertence in meeting the recommended maintenance schedule does not result in catastrophic failure of the product.

28. The 2.7 liter engine in the Chrysler Sebring did not have any margin of safety built into the recommended maintenance procedure, in fact the recommended maintenance procedure was not adequate to protect the engine from catastrophic failure under normal use and normal driving conditions.

29. Enhanced maintenance procedure was required for the Chrysler Sebring 2.7 L engine.

30. The enhanced maintenance was required because, among other things, the engine was prone to accumulation of oil sludge in the passageways of the cylinder block, resulting in inadequate oil circulation to the engine valves, pistons and camshafts. This caused the engine parts to eventually seize, resulting in catastrophic engine failure and permanent seizure of the engine.

31. A comparison of engines shows that the Chrysler Sebring and other Chrysler models containing 2.7 liter engines have a much greater engine failure rate due to sludge accumulation than other vehicles of comparable price and power.

32. The number of customer complaints regarding engine failure due to sludge accumulation is much greater with regard to the Chrysler Sebring and other models containing the 2.7 L engines than customer complaints of other vehicles of comparable price and power.

33. Vehicles of other manufacturers with sludge accumulation problems have instituted policies to replace engines at no cost to consumers, extending warranties to account for such problems, or providing enhanced maintenance procedures at no cost to the consumer.

34. The manufacturer of the Chrysler Sebring has not provided such repairs or replacements, extended warranties, or enhanced maintenance to its customers.

35. Due to said defect, the engine life is much shorter than the average modern new car, depriving the owner of use and value, and often necessitating the repair or replacement of the entire engine.

36. Consumers of used automobiles have become aware of such problems with the Chrysler Sebring, which diminishes the resale value of the vehicle.

37. As a result, all customers who purchased Chrysler Sebring's model years 1998 through 2003 have been damaged, both in the cost of engine replacement, the cost of enhanced maintenance, and the reduction in the value and/or resale value of the vehicle.

## A SECOND CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

38. Plaintiff repeats and reiterates each paragraph of the First Cause of Action, as if fully stated herein.

39. In light of the complexity of the modern automobile, only the manufacturers can fairly be said to

know and to understand when automobiles are suitably designed and safely made for their intended purpose.

40. The defendant manufacturer alone has the practical opportunity, as well as incentive, to turn out useful, but safe products.

41. The defendant manufacturer assumes a special responsibility to the public, which expects them to stand behind their products.

42. The burden of defects is better placed on those who produce and market the product, and should be treated as a cost of business.

43. At the time of manufacture, it was feasible, technologically and economically, to design the engines, and to provide warnings and instructions, in a manner that would reduce the risk of oil sludge accumulation causing a catastrophic engine failure with reasonable maintenance.

44. The 2.7 liter engine, as designed, manufactured and sold, was not reasonably safe because there was a substantial likelihood of damage even with reasonable engine maintenance, and it was feasible, technologically and economically, to design the engine in a safer manner.

45. If the aforesaid risk of harm were known at the time of manufacture, a reasonable person would conclude that the utility of the 2.7 liter engines, as designed, did not outweigh the risk inherent in marketing the engines designed in that manner.

46. As a result of the aforesaid, the 2.7 liter engines were defective under the doctrine of strict products liability.

47. As a result of the aforesaid, the engines were defective for lack of adequate warnings and instructions.

## A THIRD CAUSE OF ACTION FOR BREACH OF WARRANTY

48. Plaintiff repeats and reiterates each paragraph of the First and Second Causes of Action, as if fully stated herein.

49. The sale of the vehicle with a defective engine is a violation of the manufacturer's express warranties, as well as the common law and statutory implied warranty of merchantability and implied warranty of fitness for use.

50. The manufacturer has breached express warranties with regard to the vehicle, in failing to

replace the vehicle engine when it malfunctioned within the warranty period.

51. The manufacturer has breached implied warranties with regard to the vehicle, in failing to replace the vehicle engine when it malfunctioned within the implied warranty period.

52. The Magnuson-Moss Warranty Federal Trade Commission Improvement Act ("Magnuson-Moss Act"), 15 USC 2301-12 requires that a warrantor, to meet the minimum federal standards for warranty, must remedy such consumer product within a reasonable time and without charge in the case of a defect, malfunction, or failure to conform to the written warranty.

53. The Magnuson-Moss Act describes a deceptive warranty as one which would mislead a reasonable individual exercising due care, or fails to contain information necessary to make the warranty not misleading. The warranty is a deceptive warranty if it is limited in scope and application such to deceive a reasonable individual.

54. The Magnuson-Moss Act was violated.

55. In the plaintiff's case, the warranty required that the engine should have been repaired or replaced as part of the express warranty.

56.   In other instances where the express warranty had expired, the implied warranty of merchantability and the implied warranty of fitness for the intended purpose required that the engine should have been repaired or replaced when it failed under normal use and within a reasonable useful life of the product.

57.   Said express and implied warranties were breached, to the damage of the plaintiff class.

### A FOURTH CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT

58.   Plaintiff repeats and reiterates each paragraph of the First, Second and Third Causes of Action, as if fully stated herein.

59.   The technical knowledge and expertise of the manufacturer and dealer is vastly superior to the purchaser, creating an obligation on the part of the manufacturer and dealership to fully disclose all information known to the dealership about a high incidence of complaints of mechanical failures with the vehicle, or the need for enhanced maintenance of the lubrication system, and the catastrophic repercussions to the engine of failing to do so.

60. Where the manufacturer and dealership know that the safety margin in the recommended maintenance is so intolerant that failure to strictly adhere to the recommended maintenance schedule has resulted in hundreds of instances of catastrophic failure of the engine, they have an obligation to so inform the user and customer, in factual terms, with details of the information and the extent of such risk.

61. Intentionally downplaying or concealing such a risk of catastrophic failure so that the purchaser will not be discouraged from purchasing the vehicle constitutes fraudulent concealment in the marketing of the vehicle.

62. The dealership sold the vehicle to the plaintiff without informing them of any details of this high incidence of complaint of a mechanical failure.

63. The dealership sold the vehicle to the plaintiff without informing them of any details of the need to provide enhanced maintenance with regard to oil changes and types of oil.

64. The dealership intentionally concealed material facts which the dealership knew the customer would rely upon in making the purchase.

65.     If the plaintiff knew about the enhanced maintenance requirements for oil changes and types of oil, the plaintiff would not have purchased the vehicle.

66.     Had the plaintiff been advised after purchase of the need for enhanced maintenance requirements regarding oil changes and types of oil, and the catastrophic repercussions of failure to perform such maintenance, and of the high incidence of complaints of mechanical failure by customers, the plaintiff would have returned the vehicle as defective, or performed such enhanced maintenance.

67.     The dealership and manufacturer negligently failed to disclose, and/or fraudulently concealed, such complaints and need for enhanced maintenance.

68.     Defendants' acts and practices were deceptive and misleading in a material way, in violation of New York General Business Law 349.

69.     Defendants' deceptive acts and practices caused actual harm directly to plaintiff and the members of the class plaintiff represents, by increasing the cost of the product at the time of purchase, and causing economic loss upon resale.

70.    Defendants' deceptive acts and practices caused actual harm directly to plaintiff and the members of the class plaintiff represents, when the engine permanently and catastrophically seized and malfunctioned.

**JURY TRIAL DEMANDED**

71.    Plaintiffs demand a trial by jury.

**WHEREFORE**, the representative plaintiff in the class action respectfully requests a Judgment on behalf of herself and all others similarly situated, of the following:

(1) Certification of this action as a class action, with Stephanie Newman Durst as the representative of the class;

(2) An award to all members of each class, of the following relief:

   a. Upon submission of evidence of reasonable maintenance of the engine, an award of engine replacement, without charge, of engines which have failed due to oil sludge accumulation;

b. Upon submission of evidence of reasonable maintenance of the engine, an award of reimbursement of costs already expended for engine replacement;

c. An order requiring the manufacturer to give notice to all purchasers, past and present, of the 1998, 1999, 2000, 2001, 2002, and 2003 Chrysler Sebring, Chrysler Concorde, Dodge Intrepid, or Dodge Stratus automobiles with a 2.7 liter engine, detailing the enhanced maintenance procedures required for the lubrication system, and emphasizing that failure to adhere to such enhanced maintenance procedures has resulted in catastrophic failure of the engine in a specific number of instances;

d. An award of damages to all purchasers of the 1998, 1999, 2000, 2001, 2002, and 2003 Chrysler Sebring, Chrysler Concorde, Dodge Intrepid, or Dodge Stratus automobiles with a 2.7 liter engine, equivalent to the reduction in the value and/or resale value of the vehicle caused by the need for such

    enhanced maintenance procedures of the lubrication system;

e. An award of punitive damages for the fraudulent concealment and fraudulent business practices and policies of the defendant CHRYSLER LLC and its dealers;

f. An award of attorney's fees, pursuant to the Magnuson-Moss Act, and other state laws, as well as and award of all costs and expenses of this action;

 

THE DURST LAW FIRM, P.C.

_____
By:  John E. Durst, Jr.
Attorneys for Plaintiff
Stephanie Newman Durst
on behalf of herself and
all others similarly
situated
319 Broadway
New York, New York 10007
212-964-1000
212-964-1400 (fax)

**CERTIFICATION OF ATTORNEY**

I hereby certify that I have read the Complaint, that to the best of my knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Dated:  New York, New York
        July 8, 2008

_____
John E. Durst, Jr., Esq. (6544)